Good morning. Good morning, Your Honors, and may it please the Court, Kimberly Trimble, Federal Defenders, on behalf of Mr. Santos-Cordero. This Court should remand the case so that the district court judge can determine whether race was a substantial motivating factor for this peremptory challenge while considering all relevant circumstantial evidence, including the government's jury selection notes. This is a narrow request that is based on the unique procedural posture of this case. This case was a remand hearing from a reversal of a Batson violation due to the district court's error at Step 1 in not allowing the defendant to establish a prima facie showing of racial animosity. It's therefore distinguishable from the typical way that a Batson violation is raised. Well, I guess it's sort of curious to me at this point. Now, I understand it came back, and I know all of that, but does Mr. Santos-Cordero assert that the record shows that a Batson challenge was racially motivated, or does he argue that the hearing on remand was so deficient as to require a do-over? It is the second, Your Honor. Okay. The concern, it's, there are two concerns that we raised. Well, so what is your best authority for the assertion that the hearing on remand was so deficient as to require another remand? The United States, the Supreme Court's decision in Foster v. Chapman, which is consistent with prior decisions, that all relevant circumstantial evidence needs to be considered at Step 3 of a Batson hearing. And in this case, the district court judge actually indicated his interest in what was in the government's notes. And the prosecutors refused to turn them over, and the district court judge did not order that. Do you have any, has any court compelled a prosecutor to disclose jury instruction notes over the prosecutor's objections, and what arguments would support that? Yes, Your Honor. Both the Fourth Circuit and actually this exact district court judge, after this remand hearing, did it in another case. The Fourth Circuit case that's relevant is First Barnett, and that also happened in Garrison and Tyndall. All of these cases are cited in my briefing. In each one of those cases... Well, okay, you have some cases, but do you have a hard and fast rule that it's always required? Because the facts, you know, we have to look at the facts of each case, would be my interpretation of that. Certainly, Your Honor. And I cite to these three cases because it was ordered, it was specifically ordered in those three cases, particularly in Barnett, which was a direct appeal, and actually Garrison and Tyndall were also direct appeals remanded for a Batson inquiry, and they relied on the Supreme Court's guidance in Miller, Elvey, Drecke, but also in, now the court can look at Foster v. Chapman, which is discussing that all relevant circumstantial evidence needs to be considered. Well, okay. In this case, the prosecutor claims to remember, so it's not a question of the prosecutor not The juror that was excused was first out of the gate, and there's also evidence in the record that Justine Juarez was not stricken by the government and was found to be Hispanic and was on the jury, and that the defense struck Ms. Ruiz. Yes, Your Honor. So I think Your Honor's focusing on a little bit of a different subject than what I'm focusing on in the turning over of the prosecutor's notes. I think what Barnett shows, which is consistent with Supreme Court precedent, is when time has passed, there needs to be a deeper probing inquiry, and this court actually did that itself in Shirley v. Yates. That was a Ninth Circuit decision where the case had gone back, that was a habeas case, but when the case had gone back, this court indicated how important it is with the passage of time to look at other relevant circumstantial evidence, and particularly noted how important jury selection notes could be because they are contemporaneous, and in particular in Shirley v. Yates, this court noted that with the passage of time, the party who is defending the strike would have time to reflect and to review the transcript, which we know happened in this case because the prosecutor actually cited to the transcript when she was talking about her reasons. So in this particular procedural posture, when it's not a contemporaneous explanation by the party exercising the strike, there needs to be more done to ensure that the reasons that she challenged Ms. Perez was because she demonstrated a lack of confidence in her ability to be impartial on an immigration case, and it was an immigration case, and then at step three, the district court found the U.S. attorney to be upright and honest and that her reasons for the peremptory challenge were race-neutral, and also conformed with the court's observation of Ms. Perez, which I think that there's pretty good evidence to indicate the court didn't make it up for just that hearing because that was, it came up in the first time that it was up here. So the court jumped the broom or whatever and went to the, but I guess even if we review this de novo, have you carried your burden of showing that the challengers refer to discriminatory purpose? Well, I have two answers to that, Your Honor. First, I want to emphasize that the prosecutor who was there at trial was only appearing telephonically at this hearing. Well, and apparently, are you the one that started that off with saying, like a notary, that you're really that person? Your Honor, that- So how did that go? Asking for the notary, Your Honor? Yeah, or something. That didn't seem like that went really well. The judge did not do that. The concern, though, Your Honor, is frequently when this court is talking about the trial judge's position in evaluating reasons, they're talking about the ability to observe the behavior of the prosecutor or the individual who's defending the strike. That was impossible in this case because she was appearing telephonically. And I would emphasize the attorney who was present in court representing the government had not been present at the trial. He was working off of the notes and impressions of the trial prosecutors. One of whom- I'm not sure the trial court's observation is really meant to be something much later. Usually you're talking about observation at the time of trial, and she was surely present at the time of trial. I mean, the whole problem here is when this issue came up, the district court seized the issue itself and didn't let the parties speak, and that's why it had to be remanded. And I'll go ahead and observe the district judge. I have great respect for him, but he got way too involved the second time, too. Having said that, there still is a factual record there, and I share Judge Callahan's question as to why that factual record isn't sufficient to support the conclusion the district court reached. Well, for several reasons, Your Honor. First and foremost, because of the Supreme Court's guidance in Rogers v. Richmond that facts that are reached when applying an erroneous historical standard cannot plausibly be expected to furnish the basis for correct conclusions merely because a correct standard is later applied. So what- Well, but he's recalling observations he made at the time. It's not purely a matter of this has come up two years later and we're trying to reach back. He's talking at the time. The problem is he got too involved the first time, but in getting involved, he made factual observations. But, Your Honor, you've hit on exactly the problem with the way that this was handled even on remand, and this is the concern that this Court expressed in Shirley v. Yates. Because of the district judge's involvement in the first time, where he expressed all of his reasons, the prosecutor was essentially furnished with reasons that she knew would be accepted by the district court judge. And so when repeating- In this case, it seems to be the key fact is the district court itself appeared to observe the reason why he doubted this particular prospective juror was going to stick around. And Your Honor, he also acknowledged at the remand hearing that another person could have had a different impression. And so all I'm suggesting here is with that background, I'm not saying the district judge can't consider his own observations at step three.  I think that's a good idea. But this court precedent requires him to also consider all other available evidence, circumstantial evidence. And we're not even asking that these notes be provided to the defense. That wasn't the original request. It would be lovely if this Court ordered that. But what we're asking for is minimum in-camera review, which is routinely done. It was done in all of those Fourth Circuit cases. Do you want to save any time for rebuttal? You're down under a minute. Yes, Your Honor. Thanks. Thank you. Good morning. Good morning. May it please the Court, Benjamin Hawley for the United States. So to begin with the defense's arguments regarding those Fourth Circuit cases, Barnett, Tyndall, and Garrison, all of those cases, and particularly Barnett makes this clear, said this only arises when it's a highly unusual procedural posture. There have to be compelling reasons. That wasn't the case. That wasn't the case here. This is essentially a mine run, illegal entry case that happens every week in the Southern District. There was nothing particularly unusual other than potentially the judge's statements the would have taken this Batson inquiry into those unusual circumstances. Most importantly is that the prosecutor had a clear and independent memory of exactly why she struck the juror. She provided, not only indicated that, but provided those reasons, went into specific details that tracked what the district court had said, but also added some additional information. So for example, the prosecutor, and this is at page 97 of the record, talked about not only the hesitation, but that juror number one's body language showed hesitation as well her tone, that essentially everything about the way she was answering indicated some hesitation about whether she could be fair on an immigration case. The fact that it tracks with what the district court said doesn't indicate that the prosecutor is making it up. It indicates that that was what everyone observed. It does raise the possibility that the prosecutor has been given the answer key by the teacher by saying, oh, this is what I observed, so all you really need, and the subtext of that Would permitting a review of the contemporaneous notes at least open the door to what the prosecutor really observed at the time? So two responses. First is that the prosecutor essentially can't unring that bell in the sense of once the judge is given that reason, and as you noted, he did so kind of live, right? As soon as the juror hesitated, he was talking about hesitation, and we can't really impute that to the prosecutor to then say that's also what I observed, that that somehow undercuts her explanation. It doesn't mean her explanation adopting the same thing is untrue, but at least it raises a question of is she taking advantage of the fact she's been told what to say? And I would say no, because again, she also indicated additional information, right? The tone, the body language, and that it's supported by that record initially. It's not just once we got to the Batson hearing that the judge was then saying, here are the reasons that I would have assumed the prosecutor would have struck that juror. It was contemporaneous with the hesitation, which is somewhat unusual on a cold record. We actually have hesitation indicated. Let me ask you, is it that the trial judge has now created a structural problem that did not get corrected the second time around? No. No, because on the second time around, we have now done the complete inquiry. The problem the first time was step one, that we didn't get past step one. Now the court went on to steps two and three, and in so doing, considered the evidence, the arguments of the parties, did so at length, and ultimately made the finding that the defense had not shown purposeful discrimination. But even if this court did find that there was a problem or that the district court somehow infected the later step three analysis, the court can always review de novo, as this court said in Alvarez-Oloa, for example. And on de novo review, there's again, affirmative evidence that the prosecutor did not purposefully discriminate. That's that hesitation noted live in the record, and really nothing to undercut that. But her answer does, doesn't it? Perez's answer to the question does undercut that, doesn't it? I'm not sure I understand. She says, I can be fair and impartial. Sure, and she ultimately gets to that answer, which is why she was not struck for cause or we didn't move to strike for cause. But that initial hesitation certainly grounds for a peremptory challenge when she says because of immigration, because of the type of charge, essentially, that we're going to be talking about, I'm hesitant. I'm not sure that I can be fair in that scenario. So on either approach, either reviewing what the district court did and the procedure, or even if this court were to go to de novo review, we would ask that this court affirmed the district court and find that there was no purposeful discrimination. Unless the court has any questions? No, there would be further questions. Thank you for your argument. Thank you, Your Honors. I have just two points for rebuttal. First, the government said that those Fourth Circuit cases were in a highly unusual procedural posture, whereas this case was mine run. In fact, those cases were remands because the Batson analysis had not been done correctly. So the unusual procedural posture that the court is talking about, the Fourth Circuit is talking about, is that it was not a contemporaneous trial objection handled in the moment, but rather a remand hearing. So we have the exact same unusual procedural posture here that would allow for the same further inspection into the government's jury selection notes. I also did want to provide, for Your Honor, the citation for the case where this precise district judge has already ordered the government to turn over its notes. That case is United States v. Lara Bonilla, 16 CR 2375. That was also a remand hearing for a Batson question, and in that case, the very same court judge recognized that he could look at jury selection notes when determining whether there had been a Batson violation. All I'm asking is for this court to give the judge the same opportunity here to consider all relevance. You want another judge, though, don't you? Well, Your Honor, I'm... You don't really want the same judge, didn't I? Am I missing that? Yes, Your Honor. I am concerned, particularly for the quotation cited on page 27. Oh, no. That was just... You just said... I'm just... I'm colding you to your word. You say, well, I just want this judge to have a chance to look at them, but I read it. You want another judge. And, Your Honor, you were correct that when I wrote this brief, that was what I was asking. He took this step after I wrote this brief. And so... So now you think it could be fair on remand? It gives me more confidence that he would be willing to consider this... Are you withdrawing that request? I'm not withdrawing it. If Your Honors agree that his concern about this inquiry shows that he's not... I just want to make sure I know your position. Thank you, Your Honor. All right. Thank you. This matter will stand submitted.
judges: Clifton, Callahan, Hoyt